UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 3:15CR067 |
| Plaintiff, | : | JUDGE WALTER H. RICE |
| v. | : | |
| ADRIAN PIEDRA CORDOBA, | : | UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS |
| Defendant. | : | THE INDICTMENT |

1.  Introduction.

The majority of courts around the country who have considered the very constitutional challenges to 18 U.S.C. § 922(g)(5)(A) raised by the defendant have uniformly rejected such claims. The defendant's claims are without merit, and his motion to dismiss the indictment should be denied.

2.  Second Amendment.

The Second Amendment reads: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." Relying on the Fourth Amendment case of *United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990), the defendant -- an illegal alien and a Costa Rican national -- claims that "the people" in the "right of the people to keep and bear Arms" includes him, and that a conviction under 18 U.S.C. § 922(g)(5)(A), the federal statute prohibiting illegal aliens from possessing firearms or ammunition, would violate this proclaimed Second Amendment right. The defendant's claim is meritless.

Though the Sixth Circuit has not had occasion to consider whether the Second Amendment's right to bear arms extends to illegal aliens, every other appellate court to consider the issue, until last month, has rejected extending Second Amendment rights to illegal aliens. The first circuit court to do so was the Fifth Circuit. In *United States v. Portillo-Munoz*, 643 F.3d 437, 440 (5th Cir. 2011), the defendant (like Cordoba here) relied on *Verdugo-Urquidez* in arguing that the phrase "the people" in the Fourth Amendment context means the same in the Second Amendment context. The Fifth Circuit, however, noted that "the use of 'the people' in both the Second and the Fourth Amendment" does not mandate "a holding that the two amendments cover exactly the same groups of people." *Id.* at 440. As the court further noted,

> [t]he purposes of the Second and the Fourth Amendment are different. The Second Amendment grants an affirmative right to keep and bear arms, while the Fourth Amendment is at its core a protective right against abuses by the government. Attempts to precisely analogize the scope of these two amendments is misguided, and we find it reasonable that an affirmative right would be extended to fewer groups than would a protective right.

*Id.* at 440-441. The Fifth Circuit went on to explain that "the Supreme Court has long held that Congress has the authority to make laws governing the conduct of aliens that would be unconstitutional if made to apply to citizens," and that "courts have made clear that the Constitution does not prohibit Congress from making laws that distinguish between citizens and aliens and between lawful and illegal aliens." *Id.* at 441-442. The court distinguished *Verdugo-Urquidez*, concluding that "[w]hatever else the term means or includes, the phrase 'the people' in the Second Amendment of the Constitution does not include aliens illegally in the United States . . ." *Id.* at 442. The court ultimately held that 18 U.S.C. § 922(g)(5) "is constitutional under the Second Amendment." *Id.; see also United States v. Mirza,* 454 Fed.Appx. 249, 257 (5th Cir. 2011) (following *Portillo-Munoz*).

The Eight Circuit in a *per curiam* order similarly rejected a Second Amendment-based challenge to a conviction under 18 U.S.C. § 922(g)(5)(A). *United States v. Flores*, 663 F.3d 1022, 1023 (8th Cir. 2011). The Eight Circuit held that it agreed "with the Fifth Circuit that the protections of the Second Amendment do not extend to aliens illegally present in this country." *Id.*

The Fourth Circuit more recently, after an extensive analysis of *Heller* and its historical underpinnings, likewise concluded that "illegal aliens do not belong to the class of law-abiding members of the political community to whom the protection of the Second Amendment is given . . ." *United States v. Carpio-Leon*, 701 F.3d 974, 976-982 (4th Cir. 2012).

The Tenth Circuit in *United States v. Huitron-Guizar*, 678 F.3d 1164, 1165-1170 (10th Cir. 2012), upheld the constitutionality of 18 U.S.C. § 922(g)(5)(A), without reaching the issue of whether the Second Amendment extends rights to illegal aliens. It avoided that question, concluding that it could "easily find § 922(g)(5) constitutional" even *assuming* the Second Amendment applied to "at least some aliens unlawfully here." *Id.* at 1169. As the court noted,

> Congress may have concluded that illegal aliens, already in probable present violation of the law, simply do not receive the full panoply of constitutional rights enjoyed by law-abiding citizens." Or that such individuals, largely outside the formal system of registration, employment, and identification, are harder to trace and more likely to assume a false identity. Or Congress may have concluded that those who show a willingness to defy our law are candidates for further misfeasance or at least a group that ought not be armed when authorities seek them.

*Id.* at 1170. As further support for its conclusion, the court observed that "courts must defer to Congress as it lawfully exercises its constitutional power to distinguish between citizens and non-citizens, or between lawful and unlawful aliens, and to ensure safety and order," and "[t]he bottom line is that crime control and public safety are indisputably 'important' interests." *Id.*

Additionally, numerous district courts have similarly rejected efforts to extend Second Amendment rights to illegal aliens. *See, e.g., United States v. Luviano-Vega*, 2010 WL 3732137, at *3 (E.D.N.C. Sept. 20, 2010) ("*Heller* . . . provides no support for defendant's contention that aliens illegally present in the United States possess a Second Amendment right to bear arms"); *United States v. Guerrero-Leco*, 2008 WL 4534226, at *1 (W.D.N.C. Oct. 6, 2008) (rejecting the contention that the individual right to bear firearms conferred by *Heller* extends to illegal aliens, noting *Heller* "did not find that all individuals present in America are protected by the Second Amendment. Rather, the Court described that protection as belonging to American citizens"); *United States v. Martinez-Guillen*, 2011 WL 588350, at *2 (M.D. Ala. Jan. 12, 2011) (holding that the law prohibiting illegal aliens from possessing firearms is constitutional as a "presumptively lawful regulatory measure[]" under *Heller*); *United States v. Flores*, 2010 WL 4720223, at *1 (D. Minn. Nov. 15, 2010) (same); *United States v. Lewis*, 2010 WL 3370754, at *3 (N.D. Ga. May 26, 2010) (holding that, under *Heller*, the phrase "the people" in the Second Amendment does not include illegal aliens); *United States v. Yanez-Vasquez*, 2010 U.S. Dist. LEXIS 8166, at *5-*13 (D. Kan. Jan. 28, 2010) (citing *Heller* for the proposition that only citizens have Second Amendment rights); *United States v. Boffil-Rivera*, 2008 U.S. Dist. LEXIS 84633 at *21-22 (S.D. Fla. Aug. 12, 2008) (holding that "the individual right to bear arms defined by *Heller* does not apply to an illegal and unlawful alien"); *United States v. Meza*, 2014 WL 1406301 (E.D. Wis. April 11, 2014) (rejecting facial and as applied challenge to § 922(g)(5)).

Notably however, in the past week, the Seventh Circuit, held that the language in *Heller* supported the view that "all people, including non-U.S, citizens, whether or not they are authorized to be in this country, enjoy at least some rights under the Second Amendment."

4

*United States v. Meza-Rodriguez*, --- F.3d ----, 2015 WL 4939943 (7th Cir. 2015). Nonetheless, the Court held that Meza-Rodriguez's "ability to invoke the Second Amendment does not resolve this case… because the right to bear arms is not unlimited. Congress may circumscribe this right in some instances without running afoul of the Constitution." (*Id.* at *10.) As the Court concluded:

> Congress's interest in prohibiting persons who are difficult to track and who have an interest in eluding law enforcement is strong enough to support the conclusion that 18 U.S.C. § 922(g)(5) does not impermissibly restrict Meza-Rodriguez's Second Amendment right to bear arms.

In a currently pending case, the Sixth Circuit is considering whether a prohibition on the possession of firearms by a person "who has been committed to a mental institution," 18 U.S.C. § 922(g)(4), violates the Second Amendment, as applied to an individual who 28 years ago was involuntarily committed to a mental institution for less than one month after allegedly undergoing an emotionally devastating divorce. *Tyler v. Hillsdale County Sheriff's Dep't*, 775 F.3d 308 (6th Cir. 2014) (rehearing, en banc, granted by *Tyler v. Hillsdale County Sheriff's Dep't*, 2015 U.S. App. LEXIS 6638 (6th Cir., Apr. 21, 2015). In ruling on this issue, the appropriate level of scrutiny remains to be determined.

In its clearest statement on the subject, the Supreme Court wrote that the Second Amendment "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at 635 (emphasis added). The defendant, a Costa Rican national illegally present in the United States, is neither law-abiding nor a citizen. He does not, therefore, have a right to possess a gun in the United States. The defendant's challenge to 18 U.S.C. § 922(g)(5)(A), like the challenges made by other defendants before him, "must fail." See *Carpio-Leon*, 701 F.3d at 982 ("we conclude that Carpio-Leon's constitutional challenge under the Second Amendment must fail.").

As noted by the Seventh Circuit in *Meza-Rodriguez*,

> Congress's objective in passing § 922(g) was "to keep guns out of the hands of presumptively risky people" and to "suppress[ ] armed violence." *Yancey,* 621 F.3d at 683–84 (citing S.REP. NO. 90–1501, at 22 (1968)); see also *Huitron–Guizar,* 678 F.3d at 1169–70 (§ 922(g)'s purposes are to assist law enforcement in combating crime and to keep weapons away from those deemed dangerous or irresponsible). One such group includes aliens "who ... [are] illegally or unlawfully in the United States." 18 U.S.C. § 922(g)(5)(A). The government argues that the ban on the possession of firearms by this group of people is substantially related to the statute's general objectives because such persons are able purposefully to evade detection by law enforcement. We agree with this position: unauthorized noncitizens often live "largely outside the formal system of registration, employment, and identification, [and] are harder to trace and more likely to assume a false identity ." *Huitron–Guizar,* 678 F.3d at 1170. Persons with a strong incentive to use false identification papers will be more difficult to keep tabs on than the general population. (Section 922(g)(5)(B)'s prohibition on firearms possession by most aliens who are lawfully present but who hold only nonimmigrant visas reflects a similar concern. Holders of nonimmigrant visas sometimes have no address associated with them, making them equally difficult to track.)  (*Id.* at *8.)

Assuming arguendo that this Court were to conclude that the Second Amendment extends to illegal aliens, the prohibition set forth in § 922(g)(5)(A) is "presumptively lawful," without reference to any level of scrutiny. Without addressing what standard of scrutiny might apply to other firearm regulations, the Supreme Court in *Heller* announced that certain prohibitions on firearm possession were "presumptively lawful." *Heller*, 554 U.S. at 626, 627 n.26. While the Supreme Court did not provide an "exhaustive list," it did specifically highlight the ban on firearm possession by felons as an example of a "presumptively lawful regulatory measure." Section 922(g)(5)(A), which disarms illegal aliens, is closely analogous to this presumptively lawful prohibition. Section 922(g)(5)(A), therefore, can be upheld on this basis without reference to any standard of scrutiny.

To the extent a scrutiny level must be applied, absent application of the rationale basis test (*see United States v. Yanez-Vasquez*, 2010 U.S. Dist. LEXIS 8166, at *15 (noting that

applicable standard may be rationale basis due to its historical application to matters involving aliens)), intermediate scrutiny would be the appropriate level.  Whereas *Tyler* involves an as applied challenge to § 922(g)(4) involving a *citizen* who was previously committed, the challenge here to § 922(g)(5)(A) involves illegal aliens. Additionally, while it is not entirely clear from his motion, it appears the defendant here is making a disfavored "facial" challenge to § 922(g)(5)(A) (*see Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008) ("Facial challenges are disfavored for several reasons.")), whereas the defendant in *Tyler* challenged § 922(g)(4) only as applied to him.   While the Supreme Court declined to articulate a standard of review in *Heller*, its conclusion that specific firearm regulations were "presumptively lawful" under the Second Amendment displays a degree of deference to Congress that is inconsistent with strict scrutiny review. *See Heller*, 554 U.S. at 688 (Breyer, J., dissenting) (noting that "the majority implicitly, and appropriately, rejects [a 'strict scrutiny' test] by broadly approving a set of laws . . . whose constitutionality under a strict scrutiny standard would be far from clear"). This is particularly true in immigration-related matters, where Congress' power is not merely "broad," but "over no conceivable subject is the legislative power of Congress more complete." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977). As "a fundamental sovereign attribute," *id.*, "the responsibility for regulating the relationship between the United States and our alien visitors"— determinations about which aliens should be allowed to enter and remain in the United States and the terms and conditions imposed upon such aliens while they are here—is "committed to the political branches of the Federal Government." *Matthews v. Diaz*, 426 U.S. 67, 81 (1976). And, because Congress' "power over aliens is of a political character," its exercise of that power is "subject only to narrow judicial review." *Hampton v. Mow Sun Wong*, 426 U.S. 88, 101 n.21 (1976); *see also Shaughnessy v. Mezei*, 345 U.S. 206, 210 (1953)

(holding that congressional power over aliens is "largely immune from judicial control"). This case bears on immigration, not the previously committed, which would warrant intermediate scrutiny to the extent any level of scrutiny must be applied. For the reasons stated in *United States v. Huitron-Guizar*, 678 F.3d at 1169-1170, section 922(g)(5)(A) would "easily" survive intermediate scrutiny.

3. <u>Fifth Amendment</u>.

The defendant's Fifth Amendment claims fare no better. Courts that have considered identical and similar claims have rejected them. *See, e.g., United States v. Portillo-Munoz*, 643 F.3d at 442 n. 4 ("If we were to reach the merits of Portillo's due process claim, we would find his arguments wholly unconvincing."); *United States v. Carpio-Leon*, 701 F.3d at 982-983 (rejecting equal protection challenge under the Due Process clause of the Fifth Amendment); *United States v. Huitron-Guizar*, 678 F.3d at 1166-1167 (rejecting Fifth Amendment Due Process/Equal Protection challenge); *United States v. Mirza*, 454 Fed.Appx. at 258-259 (rejected substantive and procedural due process challenge); *United States v. Yanez-Vasquez*, 2010 U.S. Dist. LEXIS 8166, at *13-*23 (rejected Fifth Amendment Equal Protection challenge). The defendant has provided no reason for departing from these well-reasoned decisions.

//

//

//

//

//

//

//

4. <u>Conclusion</u>.

For the foregoing reasons, the defendant's motion to dismiss the indictment should be denied.

>Respectfully submitted,
>
>CARTER M. STEWART
>United States Attorney
>
>s/Sheila G. Lafferty
>SHEILA G. LAFFERTY (0042554)
>Assistant United States Attorney
>Attorney for Plaintiff
>200 West Second Street, Suite 600
>Dayton, Ohio 45402
>Office: (937) 225-2910
>Fax: (937) 225-2564
>E-mail: Sheila.Lafferty@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Motion was served this 3rd day of September, 2015, electronically on: F. Arthur Mullins, Esq.

>s/Sheila G. Lafferty
>SHEILA G. LAFFERTY (0042554)
>Assistant United States Attorney